J. C. MERRITT V. WILLIAM WILLIAMS.

1. PARTNERSHIP; *Notice of Dissolution.* Only those who are in the *habit of dealing* with co-partners are entitled to actual notice of their dissolution.

2. ———— A *single cash sale* of cattle to a partnership firm dealing in cattle does not make the vendor such a dealer as entitles him to actual notice of the dissolution of the partnership, or through lack of such notice to hold both partners on a sale made two years thereafter, and eighteen months after the dissolution of the firm, where the actual dealings are had with only one of the former partners.

*Error from Allen District Court.*

ACTION by *Williams* against "*Merritt* & Sprague," as partners, to recover the purchase price of a lot of cattle sold by him. Sprague made default. *Merritt* answered for himself, denying under oath, that any partnership existed between himself and Sprague, and denied any purchase by himself, or by himself and Sprague, or any indebtedness on his part for the cattle sold by *Williams.* Trial at the April Term 1875. It was shown by the evidence that *Merritt* and Sprague had been partners in 1872; that in that year *Williams* had sold them one lot of cattle; that they dissolved their partnership in the spring of 1873; that the sale upon which the present action was grounded was made in September 1874, and that the parties present and acting in the making of said sale and purchase were *Williams* and Sprague. *Williams* claimed that Sprague made the purchase for the copartnership of "*Merritt* & Sprague." The court gave among others the following instruction :

"If the jury believe from the evidence that the defendants during the years 1872 and 1873 were partners in the business of buying and selling cattle, and that during that time the plaintiff and defendants had business transactions together with reference to said business, and afterward said partnership was dissolved, and that afterward plaintiff sold to one of said defendants the lot of cattle sold on or about the 10th of September 1874, and the price of which is the

subject of this action; and if the jury further believe that the plaintiff's residence is comparatively remote from the defendants', and plaintiff had no actual notice of the dissolution of the partnership, they will find for the plaintiff."

Verdict and judgment for plaintiff against both defendants, and *Merritt* appeals, and brings the case here for review.

*W. A. Johnson*, and *H. H. Pulver*, for plaintiff in error, contended, first, that the testimony showed only one transaction between Merritt & Sprague and Williams, and that a cash transaction, and that therefore Williams was not entitled to notice of dissolution. Second, that if the sale, (as stated in the instructions,) was to "*one* of the defendants," the plaintiff had no need of notice of the dissolution of the partnership, for it would not affect this transaction, the credit not being given to the partnership, but to an individual.

The opinion of the court was delivered by

BREWER, J.: On the 10th of September 1874, Williams sold forty-eight head of steers. He claims that he sold them to the firm of Sprague & Merritt. Merritt denies that there was such a firm, or that he was a partner of Sprague, and alleges that the sale was made to Sprague, who alone was responsible therefor. The question therefore in the case was, whether Merritt was a partner of Sprague's, or had so acted as to justify Williams in holding him as a partner, or had joined with Sprague in making the purchase. No question is made in this court upon the admission or rejection of testimony, but error is claimed on the instructions. We shall notice but a single matter, as in that we think there was error. Both Sprague and Merritt testified that no partnership existed at the time of the purchase; that while they had at one time been partners in the cattle business, such partnership had been dissolved some eighteen months or more prior thereto. Williams lived about thirty-five miles from Iola, in or near which both Sprague and Merritt resided. Some two or two-and-a-half years prior to this sale, and while the firm of "Sprague & Merritt" existed, Williams sold them

a lot of cattle. This single sale was the only transaction between the parties prior to this controversy. It does not appear whether it was made for cash, or upon credit. Of course it cannot be presumed to have been made upon credit; and whoever would found a right upon the claim that it was so made, must prove it. Williams testified that if the firm of Sprague & Merritt had been dissolved, he had had no notice of the dissolution, and supposed they were still partners. Was he entitled to actual notice? and could he, for lack of it, hold both Sprague and Merritt, although the partnership had in fact been dissolved, and the dealings were had solely with Sprague? We think not. The language of the books is, that those who have been in the habit of dealing with a firm are entitled to actual notice: Collyer on Part., § 533; Story on Part., § 161. Can a man who has simply made one sale to it, be considered in *the habit* of dealing with a firm? Does one who sells only for cash extend any credit to a firm because of its individual partners? Will a single transaction with a firm carry with it through all time the right to notice of a dissolution? and must a firm run back through all the years of its existence, and give actual notice to every individual who has ever had a single dealing with it? It may be that the number, and character, and time of the dealings, which will entitle a party to actual notice of a firm's dissolution, are not exactly specified, and that often it is a question for the jury whether such notice was requisite to release a retiring partner. But we think no authority can be found to sustain the necessity of notice in a case like the present. When a known partner retires, why should different notice be given to a dealer with the firm than that which is given to the public generally? Any person may know that he was a member, and any one not actually informed may be misled into trusting the firm on the supposition that he is still a member. Why any distinction? Because he who has established a course of dealing with a firm may be supposed to have made prior inquiries as to the members of the firm, and their respective business character and standing, and gives his credit upon the faith of such inquiries

and the consequent information. It is fair that that course of dealing should be continued upon the same basis of trust and confidence as that upon which it was commenced, and that he should be informed if any change is made which affects the conditions of that credit. But when no credit has ever been extended, and no occasion to make any inquiries, the reason for the rule ceases. *Cessante ratione legis cessat ipsa lex.* Hence, if a dormant partner retires, no notice is necessary, because no credit was ever given to the firm on account of his supposed membership in it. So also, as is said in *Clapp v. Rogers,* 12 N. Y. 283, "it follows that a purchase strictly for cash would not constitute a dealing within the rule, for a person selling under such circumstances would have no occasion to inquire who the partners were, or as to their responsibility." 2 Bell's Com. 540; *Vernon v. Manhattan Co.,* 22 Wend. 183. In *Wardwell v. Haight,* 2 Barb. 549, the court declares that, "The principle is, that credit already raised on the faith of the partnership is presumed to be continued on the same footing unless special notice of a change is given." For these reasons, and upon these authorities, we think the jury should have been instructed that this single prior sale did not give Williams a right to actual notice of the dissolution, or to hold both partners because of a want of such notice; and that any instruction implying the contrary was wrong. For this error in giving instructions, judgment will be reversed and the case remanded for a new trial.

We of course express no opinion as to whether the firm had in fact been dissolved, or whether Merritt actually joined in the purchase. We may also remark, that acts and conduct which induce a belief in the mind of a party dealing with certain persons of the existence of a partnership between them, must, to support a finding of a partnership, be such as would induce the belief in the minds of men of ordinary judgment and prudence.

All the Justices concurring.