No. 34,699

Mrs. F. H. Schmitz, *Appellee* and *Appellant*, v. Albert F. Stockman, The N. Sauer Milling Company, The Halstead Milling Company et al., *Appellees;* W. H. Burke, Substituted Collector of Internal Revenue for the District of Kansas, and The United States of America, *Appellants.*

(101 P. 2d 962)

Opinion filed May 4, 1940.

*Summerfield S. Alexander,* United States district attorney, for appellant W. H. Burke.

*William J. Wertz, Vincent F. Hiebsch, Forest V. McCalley, Milton Zacharias,* all of Wichita, and *Chester Stevens,* of Independence, for appellee Mrs. F. H. Schmitz; *Edwin S. McAnany, Thomas M. Van Cleave, Willard L. Phillips, Bernhard W. Alden, Patrick B. McAnany* and *Thos. M. Van Cleave, Jr.,* all of

Kansas City, for appellee Midland Flour Milling Company; *George Austin Brown*, of Wichita, for the appellees Lloyd Smith, G. F. Woodworth, George W. Wear and Fred Unruh.

The opinion of the court was delivered by

HARVEY, J.: This was an action on a note for $1,000 and to foreclose a chattel mortgage given by the defendant Albert F. Stockman to secure it on his undivided two-thirds interest in a crop of wheat then growing upon certain described leased land in Harvey county. The record presents several controversies between plaintiff and the respective defendants, or between defendants respecting liens on this crop, or priority of such liens. We think best separately to state these controversies, the judgment of the trial court thereon, and our decision.

The defendant, the United States, by H. D. Baker (W. H. Burke substituted), collector of internal revenue for the district of Kansas, in its answer denied Stockman was indebted to plaintiff, and alleged the note and mortgage sued on were without consideration, or, if any indebtedness evidenced by these instruments ever existed, the same has been paid, and by cross petition claimed a first lien upon Stockman's share of the wheat because of a federal internal revenue tax levied against Stockman. The trial court found that plaintiff, who is the grandmother of Stockman, over a period of several years had furnished sums of money to Stockman, the amount of which far exceeded $1,000, and that she had made and kept a record of these transactions in a little book she had; that under date of October 1, 1936, Stockman signed a note, payable to plaintiff, for $1,000, and under date of May 3, 1937, Stockman executed the mortgage in question, and this was recorded May 5, 1937, in the office of the register of deeds of Harvey county. In March, 1937, Stockman pleaded guilty to liquor violations in the United States district court of Kansas. In February, 1937, an assessment list was received by the collector of internal revenue for Kansas from the commissioner, assessing a liquor tax of $3,285.60 against Stockman. On April 3, 1937, a notice of demand was mailed to Stockman, and on April 13 a second notice was mailed to him, neither of which was returned, and on April 23 a warrant for distraint was duly issued and served on Stockman May 10. On May 5, 1937, a notice of the tax lien was filed in the office of the clerk of the United States district court at Wichita, and on May 6, 1937, a notice of the tax lien was filed in the office of the register of deeds of Harvey county, and on the same day

with the register of deeds of Sedgwick county, in which county Stockman then was living. The trial court found that both the defendant Stockman and the plaintiff Schmitz were aware of the claim of the government at the time of the execution and delivery of the chattel mortgage in question, and that the chattel mortgage was given for the purpose of evading the government tax. The court concluded that the chattel mortgage cannot be set up as a prior claim to the government tax lien, and on this point rendered judgment accordingly, giving the government a first lien for the balance due on the tax, giving plaintiff a personal judgment against Stockman for the amount due on the note, and giving her a lien second to that of the government upon the wheat. Plaintiff has appealed from that part of the judgment which allowed the government a lien superior to hers on the wheat. We think the point is well taken.

Under the established law of this state a debtor has a right to prefer creditors, and in doing so may pay or secure one of his creditors so long as such performance is in payment of a bona fide preëxisting indebtedness. (See *Brecheisen v. Clark*, 103 Kan. 662, 176 Pac. 137; *People's State Bank v. Dierking*, 143 Kan. 617, 56 P. 2d 85; *First Nat'l Bank v. Cottingim*, 145 Kan. 330, 65 P. 2d 293.) The federal statute, 26 U. S. C. A., § 1560, 1940 ed., § 3670, imposes a lien in favor of the government on the property of the taxpayer. Under 26 U. S. C. A., § 1561, 1940 ed., § 3671, the date of the lien, "unless another date is specifically fixed by law," is the time the assessment list is received by the collector of internal revenue for the district, and by 26 U. S. C. A., § 1562, 1940 ed., § 3672, it is provided:

"Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector— (1) In accordance with the law of the state or territory in which the property subject to the lien is situated, whenever the state or territory has by law provided for the filing of such notice; . . ."

Our pertinent statute (G. S. 1935, 79-2605) reads:

"That notices of tax liens under the internal revenue laws of the United States, and certificates of discharge thereof, may be filed in the office of the register of deeds in any county in the state of Kansas, and when so filed shall be notice to all persons claiming an interest in the property of the person or persons against whom filed: . . ."

In *United States v. Beaver Run Coal Co.*, 99 F. 2d 610, the federal statute above quoted is considered and applied. It is pointed out that the statute was enacted by congress to avoid the hardships re-

sulting from the interpretation of the then existing statute by the United States supreme court in *United States v. Snyder*, 149 U. S. 210, 37 L. Ed. 705, 13 S. Ct. 846, which case is cited and relied upon by counsel for the government in this case. It was there held:

"Positive legislative enactments prescribing conditions essential to existence and preservation of statutory lien cannot be disregarded.

"A mortgage lien was entitled to priority over government's tax lien upon mining properties, where tax lien notice was not filed pursuant to state law until long after mortgage had been executed and recorded. . . .

"Where United States had failed to file notice of tax lien as required by statute, court would not read into statute any limitation based upon equitable doctrine of bona fide purchasers without notice so as to give tax lien priority over lien of mortgagee which, at the time of execution of mortgage, knew that mortgagor owed taxes." (Headnote, ¶¶ 2, 3, 4.)

Counsel for the government argue that there was insufficient evidence to sustain the finding of the court that plaintiff's note and mortgage evidenced a valid indebtedness. We have carefully examined the record and find ample competent evidence to support the judgment of the court on this point. Counsel for the government cite 26 U. S. C. A., §§ 1580 to 1584, pertaining to distraint and exemptions. This argument is beside the point. This is not a distraint proceeding, and there are no claims for exemption. The controversy here, particularly between plaintiff and the government, is the priority of liens. We think the trial court erred in holding that the government lien was prior to that of plaintiff.

Both the plaintiff and the United States government appealed from the adverse judgments pertaining to claims of some of the other defendants. These will now be considered.

George W. Wear owned the land on which the wheat was grown. He had leased this to Stockman for a stated sum, cash rent and one-third of the wheat, delivered. He claimed a balance due of $50 on the cash rent and that this was a lien on Stockman's share of the wheat superior to that of the plaintiff, or that of the United States. The trial court so found and adjudged. There was no error in this ruling. (G. S. 1935, 67-524; *Firstenberger v. McBee*, 113 Kan. 110, 213 Pac. 813; *Shell v. Guthrie*, 129 Kan. 632, 284 Pac. 420.)

G. F. Woodworth had a past-due chattel mortgage on Stockman's combine harvester. The legal effect of this was that he had title to it. He agreed Stockman might use it to cut the wheat if he would pay for such use out of the wheat threshed. Stockman used the machine to cut all of the wheat but fifty-three acres, when it broke

down. In payment of that, he paid to Woodworth wheat of the value of $116.16. Lloyd Smith, a neighbor, harvested the remaining fifty-three acres of wheat under employment by Stockman. To pay him for this Stockman had him take a load of the harvested wheat to the Midland Flour Milling Company, where it was sold. The money received was $50 more than enough to pay Smith and he gave that sum to Stockman. Abe Unruh was the thresherman, and at Stockman's direction was paid $70.38 by the N. Sauer Milling Company, which purchased some of the wheat. The trial court held the harvesting and threshing were necessary in order for the wheat to be marketable so anyone could get money out of it, and that these parties acted in good faith without actual knowledge of the lien of plaintiff, or of the government. On behalf of the United States complaint is made of these rulings. With the lien of the plaintiff and the United States of record we think these parties cannot be said to have dealt with this wheat innocently. However, under our statute (G. S. 1935, 58-203) harvesters and threshermen may have a lien upon the crop harvested or threshed, which is "preferred to that of any prior chattel mortgage or encumbrance." Subsequent sections provide for the filing of such a lien and for a suit to enforce it. These parties, having been paid, did not file their lien, but this is no reason the statute fixing their right to the lien should not be considered. As we understand it, under the federal statute there are two general methods of procedure for the government to collect a tax of this kind. One is by distraint, but, as previously noted, this was not the procedure invoked here. Perhaps that procedure would not have been available as to an immature, growing crop of wheat. (*Isely Lumber Co. v. Kitch,* 123 Kan. 441, 256 Pac. 133.) The other is by an action in the federal district court for the determination of the government's lien upon a particular property, and if it was found to exist, to enforce it. (26 U. S. C. A. 1568, 1940 ed., 3678.) In that type of an action other lien claimants should be made parties defendant and a receiver may be appointed, if necessary. Had the government pursued that remedy in this case the action might have been commenced before harvest, in which event the necessary expense of harvesting, threshing and marketing the wheat would have been a proper charge in the receivership. While this action was in a state court, we think the government is not entitled to any greater remedy, as against those who harvested and threshed the crop, than it would have had in the federal court action above mentioned. We

therefore approve the judgment of the trial court with respect to these claimants, except in one particular. The principle just stated would not authorize the payment of the $50 by Smith to Stockman, and as to that we think plaintiff and the government were entitled to judgment as against Smith and the Midland Flour Milling Company. Appellant also contends that the evidence does not support the finding of the trial court that Abe Unruh's claim for threshing was for threshing this particular crop; that it must have been for some threshing bill of a prior time, and that the evidence discloses the crop in question was cut by combine. We think this point is well taken.

At harvest time the defendant Stockman hauled four truck loads of the wheat into Sedgwick county, where he had his wife's sister, Irene Knebler, drive the truck to the elevator of Edward M. Kelley, doing business as the Commerce Milling and Elevator Company, where the wheat was sold. Kelley paid $203.16 for the wheat by check to Irene Knebler, who turned it to the defendant, Marie Stockman, the wife of Albert F. Stockman. The trial court held Kelley not liable, on the ground he was an innocent purchaser and paid full value. Complaint is made of this ruling. We think it was erroneous and that the court should also have held Irene Knebler and Marie Stockman liable.

Stockman delivered 167 bushels of the wheat to Frank N. Ketzner in return for seed wheat Ketzner had furnished him. Ketzner sold this wheat to the Farmers Coöperative Elevator at Mount Hope. The court held neither of these parties was liable. Complaint is made of this ruling. We think it was erroneous. We find nothing in the record tending to show Ketzner had any lien on the wheat crop, and he cannot claim such a lien as against the plaintiff and the federal government.

The Midland Flour Milling Company received 610 bushels of Stockman's share of the wheat. The only controversy respecting this relates to the basis of settlement. Appellants contend the settlement should be made as for a sale of the wheat at the time it was delivered to the milling company, which was about July 1, 1937, and at the price then being paid for wheat. The milling company claimed it should settle as of the date of the judgment in this action, August 31, 1939, and at the price of wheat at that time, less a storage charge as a warehouseman, at one cent per bushel per month since the wheat was received by it. The court's judgment was in

accord with the contentions of the milling company. Appellants complain of this. It was erroneous. The milling company was not licensed as a warehouseman; it had no authority to make a contract of storage. (*Kipp v. Goffe & Carkener*, 144 Kan. 95, 58 P. 2d 102.) We do not understand it claimed to have made a storage contract with anyone. The record indicates it received the wheat as it did other wheat it was buying at that time. The judgment for plaintiff and the federal government should be rendered on that basis.

The N. Sauer Milling Company is holding the sum of $269.40 for wheat purchased. It tendered this sum into court and asked the court to determine to whom it is due. The Buhler Milling Company bought a part of this wheat from Stockman, for which it paid $460.40. The court held the company liable. With respect to both of these items the judgment of the court was that the sum should be paid into court to apply upon the government lien. These orders should be modified so that when the sums are paid into court they should be applied first to the lien of the plaintiff, then to that of the government.

Fred Unruh purchased from Stockman some of the wheat and paid him for it the sum of $57.50. The court held he was not liable. We think this ruling erroneous and he should be required to pay this sum into court to apply upon the liens of plaintiff and of the federal government.

The mortgage to plaintiff was filed of record in the office of the register of deeds of Harvey county May 5, 1937. The notice of the tax lien of the federal government was filed of record in the same office the next day, May 6, 1937. We think these liens have priority in the order of their filing dates. The filing of these liens gave notice to everyone who dealt with this wheat. We see no reason for anyone to say that he dealt with it innocently.

From what has been said the judgment of the court below should be affirmed as to the landlord's lien and the harvesters and threshermen and in other respects reversed, with directions to enter judgment in harmony with the views expressed in this opinion. It is so ordered.