No. 36,333

FRED GREEP, *Appellant,* v. RENO BRUNS and THE KANSAS ELEVATOR COMPANY, *Appellees.*

(159 P. 2d 803)

Opinion filed June 9, 1945.

C. Vincent Jones, of Clay Center, argued the cause, and H. L. Sheppeard and Wayne W. Ryan, both of Clay Center, were on the briefs for the appellant.

W. A. Kahrs, of Wichita, argued the cause, and Austin M. Cowan and Robert H. Nelson, both of Wichita, were on the briefs for appellee Reno Bruns; P. L. Edwards, of Kansas City, Mo., argued the cause, and W. M. Beall, of Clay Center, was on the briefs for appellee Kansas Elevator Company.

The opinion of the court was delivered by

PARKER, J.: In an action to recover the agreed and reasonable value of wheat delivered to an elevator the defendants demurred to the plaintiff's evidence. The trial court overruled the demurrer of one defendant and rendered judgment against him for the full amount of the plaintiff's claim. It sustained the demurrers of all other defendants. The appeal is from the ruling sustaining the demurrers and the rendition of a judgment for costs in favor of those defendants whose demurrers were sustained.

During the spring and summer of 1942 the plaintiff and eight other individuals residing in the vicinity of Longford sold wheat to the Bruns Grain Company in that city for which they were not paid. In July, 1942, the elevator was destroyed by fire and the company ceased to do business. Thereafter, the eight individuals referred to assigned their claims to plaintiff and he instituted this action against the defendants, Jesse Bruns, Reno Bruns and the Kansas Elevator Company, claiming they were jointly and severally liable for the value of all the wheat so delivered and sold by him and his assignors to the Bruns Grain Company.

Since Jesse Bruns, who was operating the elevator on all dates on which wheat was purchased, did not appeal from the judgment and the parties in the court below stipulated such wheat was worth the amount claimed at the time it was delivered, and conceded it has never been paid for, we are concerned only with allegations of the pleadings and portions of the evidence relating to the claimed relationship existing between the parties defendant on the dates liability for plaintiff's claims was incurred.

With respect to the subject just mentioned the first cause of action set forth in the petition reads:

"(2) Said The Kansas Elevator Company was at all times mentioned in the petition, a corporation, duly organized and existing under the laws of the State of Kansas, and duly engaged in the grain, feed and coal business, and buying and selling of same, at Salina, Kansas and Longford, Kansas.

"(3) At all times mentioned in the petition, the defendants herein were duly engaged together in the business of buying and selling grains, coal and feeds at Longford, Kansas, under some arrangement among themselves, by which they shared the profits and losses, the exact details of which are unknown to plaintiff, and well known to the defendants, and conducted the business at Longford, Kansas, under the trade name of The Bruns Grain Co., under which arrangement, said The Kansas Elevator Company and said Reno Bruns furnished all or most of the operating capital and the said Jesse Bruns was the local manager of the said business at Longford, Kansas, duly authorized to buy and sell grains, coal and feeds for said defendants, and to write checks upon the funds of said defendants, or otherwise to pay from the funds of defendants for same.

"(4) Plaintiff delivered to said defendants, at Longford, Kansas, within three (3) years next preceding the commencement of this suit, 919 bu. and 50 lbs. of wheat, which was at said time, of the orally agreed and reasonable value of ninety cents (.90) per bushel; and it was then and there orally agreed by and between plaintiff and said defendants, by and through their said duly authorized agent and manager, Jesse Bruns, thereunto duly authorized (but whether in writing or not, plaintiff does not know, but same is well known to defendants) that said defendants would pay plaintiff therefor, said

agreed or reasonable value, and at the option of plaintiff, at the reasonable market value of such wheat at such place at such time, as plaintiff should call for the money for said wheat at said place of business. That thereafter, and before plaintiff called for said money, the said defendants, on or about July 31, 1942, closed said place of business, and have neglected and failed, and refused to pay plaintiff for said wheat; . . ."

The petition contains eight additional causes of action but no further mention need be made of them for the reason that plaintiff's right of recovery on each, except for allegations pertaining to dates wheat was sold to the Bruns Grain Company, the identification of persons making such sales, and the subsequent assignment of their claims therefor, depends on the allegations and averments to be found in the first cause of action which by reference were made a part of all other causes of action set forth in such pleading.

Defendants, Reno Bruns and the Kansas Elevator Company, filed verified answers. In such answers they denied generally the allegations of the petition. In addition, they specifically denied they were in business with Jesse Bruns in the buying and selling of grains, coal and feeds, or that in the operation of the elevator at Longford he was acting as their agent, servant or employee, in purchasing wheat and grain from the plaintiff or his assignors.

Irrespective of whether plaintiff predicated his right of action on the theory of partnership or that of principal and agent, an examination of the pleadings makes it obvious that before he could prevail under either theory he must first establish that in purchasing wheat from plaintiff or his assignors Jesse Bruns was acting in some capacity as the agent of his codefendants. A perusal of the briefs reveals the parties regarded that question as the all-important one and the trial court so considered it for, in passing on the demurrers which were general in form, it specifically pointed out and based its ruling upon the proposition there was no evidence adduced by the plaintiff showing or tending to show that he was the agent of either Reno Bruns or of the Kansas Elevator Company.

We are required therefore, since appellant's principal specification of error raises the question, to examine the record for the purpose of determining whether under all the evidence the ruling of the trial court on the demurrers and its subsequent judgment was correct.

In attempting to establish agency as alleged in his petition the plaintiff was obliged to and did rely almost entirely upon the testimony of Jesse Bruns. From a careful examination of the record

we believe the following summarization of the testimony of this witness tells the story in the light most favorable to appellant's position.

For sometime prior to July 31, 1942, Jesse Bruns had been in the grain business at Longford, operating a grain elevator under the name of The Bruns Grain Company. The elevator building and equipment was owned by his brother, Reno Bruns, who, from and after the fall of 1938 when he was employed by the United States Government, had no interest in the business but was supposed to receive rental for his property on the basis of one cent a bushel for grain passing through the elevator up to a certain amount (not specified by the witness), three-quarters of a cent per bushel after it reached that amount up to 75,000 bushels and one-half cent per bushel on all grain in excess of such quantity. Jesse had an understanding with the Kansas Elevator Company whereby that company was to finance him in his operations. Under that arrangement an account was opened in the Commerce Trust Company in the name of the Bruns Grain Company. When he bought wheat he wrote checks on that account and the elevator company was to take care of the funds in the bank to pay such checks. He was to ship the wheat to the company, which was to sell it, take out from the proceeds the money they had advanced for checks written by him together with the usual and ordinary commission for selling wheat and deposit the balance in the Bruns Grain Company account. When so deposited the money belonged to the grain company. The witness received reports from the elevator company of the amounts for which cars of wheat were sold. The Kansas Elevator Company did not participate in any way in the profits or losses; it received no interest for the money advanced by it and paid into the account; it received nothing except the usual and ordinary commission charged for the sale of grain, and as to all wheat which had not been paid for by the elevator company it could not require the Bruns Grain Company to ship such wheat to it for sale in Kansas City.

Other testimony of the witness, more favorable to the appellant's theory than what has just been related, was in substance to the effect he had never invested any of his own money in the Bruns Grain Company; he took out no insurance on wheat in the elevator; the bookkeeping on grain that was sent to Kansas City was taken care of by the elevator company; the rent due Reno Bruns for use of the elevator building and equipment was paid by it out of funds

realized from sale of grain and deposited in the Bruns Grain Company account; checks written by him in payment for grain he had purchased were signed "The Bruns Grain Company, by Jesse Bruns, Manager"; he had not instructed the Commerce Trust Company to refuse payment on checks which he had given to some of plaintiff's assignors at the time they delivered their grain to him; just before the elevator was closed (and whether it was closed before it was destroyed by fire does not appear from the records) he received a telegram from the Kansas Elevator Company in regard to shipping, the substance of which was a direction to him to ship out the wheat, but he did not do so; that shortly after the elevator burned on July 31, 1942, H. L. Robinson and Reno Bruns were in Clay Center, and that after the fire some truckmen without instructions from him hauled away what wheat was left in the ruins.

Aside from what has just been related the only other evidence adduced by plaintiff which could possibly be construed as tending to establish agency as claimed by him in his petition came from the lips of three witnesses.

The plaintiff testified there were at all times involved in the action two elevators in Longford, one of which was, "Known as the Robinson Milling Company, Bruns running it—Bruns Elevator." He also stated he had done business at Bruns Grain Company ever since it was there, about six years prior to July 31, 1942.

The testimony of another witness, A. A. Greep, who was one of those who had assigned his claim to the plaintiff, appears in the record as follows:

"Q. Who weighed your wheat? A. I think Jesse Bruns—Reno was there sometimes, but I think Jesse Bruns always waited on me.

"Reno appeared to be 'kind of looking things over.'

"Jesse Bruns told witnesses 'Robinson was furnishing the money or something like that'."

Another witness whose testimony was produced in the form of a deposition stated he was in the insurance business and employed by a group of ten companies under the style of Mills Mutual. That his companies carried insurance in 1942 on an elevator at Longford in the name of R. E. Bruns and insurance on the wheat and merchandise with the Kansas Elevator Company. Also, that there was a loss in June or July and his company paid the Kansas Elevator Company from $1,400 to $1,600 on the stock.

In approaching determination of the import to be given the evi-

dence the trial court had before it in sustaining the demurrers, we recognize two fundamental and well-established principles. One is, what constitutes agency, and whether or not there is any competent evidence reasonably tending to prove its existence is a question of law to be determined by the court. (1 Mechem on Agency, 2d ed., 213, § 293; 2 Am. Jur. 359, § 454; 3 C. J. S. 323, 326, § 330; *Juniata College v. Warren,* 118 Kan. 228, 232, 235 Pac. 98.) Another, that whenever the relationship of principal and agent is in issue the party relying thereon to establish his demand or claim has the burden of establishing its existence by competent evidence (1 Mechem on Agency, 2d ed., 183, § 255, and 215, § 298; 2 Am. Jur. 349, § 442; 3 C. J. S. 253, § 315; *Bank v. Robinson,* 93 Kan. 464, 144 Pac. 1019; *Bank v. Frost,* 70 Kan. 480, 481, 78 Pac. 825 and *Mortgage Co. v. Randall,* 113 Kan. 62, 213 P. 2d 668).

We recognize, also, there are two types of agency, one actual and the other ostensible or apparent (1 Mechem on Agency, 2d ed., 37, § 57; 2 C. J. S. 1035, 1036, § 3, and 2 Am. Jur. 68, § 85). Competent evidence as to either type requires the overruling of a demurrer. Conversely, lack of any evidence requires that it be sustained.

The authority of an actual agent may be either express or implied. In passing upon whether there is evidence sufficient to show actual agency a court must first examine the record to ascertain if the one sought to be charged has delegated authority to the alleged agent by words which expressly and directly authorized him to do a delegable act. If that evidence appears the authority of the agent is said to be express. (2 Am. Jur. 70, § 86.) If no express authorization is found it must then inquire as to whether the alleged agent possesses implied power. The test to be applied in determining whether that authority exists is well stated in 2 C. J. S. 1045, § 23, where it is said:

"The relation of agency need not depend upon express appointment and acceptance thereof, but may be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case. If, from the facts and circumstances of the particular case, it appears that there was at least an implied intention to create it, the relation may be held to exist, notwithstanding a denial by the alleged principal, and whether or not the parties understood it to be an agency. On the other hand, where it does not appear that there was any express or implied intention to create the relation, it will not be held to exist, as where it appears that the agent was acting on his own behalf.

"An implied agency must be based on facts for which the principal is responsible, they must, in the absence of estoppel, be such as to imply an intention to create the agency, and the implication must arise from a natural

and reasonable, and not from a forced, strained, or distorted, construction of them. They must lead to the reasonable conclusion that mutual assent exists, and be such as naturally lead another to believe in and to rely on the agency. The existence of the relation will not be assumed.

"While the relation may be implied from a single transaction, it is more readily inferable from a series of transactions.

"An agency will not be inferred because a third person assumed that it existed, nor because the alleged agent assumed to act as such, nor because the conditions and circumstances were such as to make such an agency seem natural and probable and to the advantage of the supposed principal, nor from facts which show that the alleged agent was a mere instrumentality."

See, also, 2 Am. Jur. 70, § 86.

Our own decisions are in accord with the rule just quoted. In *Walker v. Eckhardt,* 122 Kan. 453, 251 Pac. 1093, we held:

"To establish the relation of agency an express appointment and an acceptance thereof is not essential, but it may be implied from other facts, such as the statements of the parties, their conduct and the relevant circumstances. (Following *Wilson v. Haun,* 97 Kan. 445, 155 Pac. 798.)" (Syl. ¶ 3.)

To the same effect are *Fritchen v. Mueller,* 132 Kan. 491, 297 Pac. 409; *Cummins v. Standard Oil Co.,* 132 Kan. 600, 296 Pac. 731, and *Lewis v. Montgomery Ward & Co.,* 144 Kan. 656, 62 P. 2d 875.

Finally if actual agency is not disclosed the court must search the record to ascertain if there is evidence sufficient to raise a factual question on whether the alleged agent of the one sought to be charged as principal had ostensible or apparent authority to obligate him by his action. An ostensible agent has been defined as one whom the principal has intentionally or by want of ordinary care induced third persons to believe to be his agent, although no authority has been conferred on him, either expressly or by implication (2 C. J. S. 1036, § 3). See, also, 2 Am. Jur. 82, 83, § 101, which reads:

"The liability of the principal for the acts and contracts of his agent is not limited to such acts and contracts of the agent as are expressly authorized, necessarily implied from express authority, or otherwise actually conferred by implication from the acts and conduct of the principal. All such acts and contracts of the agent as are within the apparent scope of the authority conferred on him, although no actual authority to do such acts or to make such contracts has been conferred, are also binding upon the principal. Apparent authority, or ostensible authority, as it is also called, is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing. Accordingly, as defined by the American Law Institute, an apparent agent is one who, with or without au-

thority, reasonably appears to third persons to be authorized to act as the agent of another."

Guided by the fundamental principles to which we have heretofore referred and fully cognizant of the rule suggested by counsel for appellant and frequently announced in our decisions (see *Picou v. Kansas City Public Service Co.*, 156 Kan. 452, 134 P. 2d 686; *Prewett v. Sholl*, 120 Kan. 158, 242 Pac. 149 and *Rowan v. Rosenthal*, 113 Kan. 604, 215 Pac. 1008), to the effect a demurrer to the evidence will only be sustained when the court is able to say, admitting every fact proven which is favorable to plaintiff as well as those which are fairly and logically to be inferred from the evidence favorable to him, that he nevertheless has failed to make out some one or more of the material facts of his case, we have carefully examined the record.

In passing it should perhaps be noted that as to some causes of action set forth in the petition Jesse Bruns had issued checks for the wheat delivered, while as to others he had merely received delivery and issued scale tickets to the seller with an agreement he would pay the market price when the latter desired to sell. The Bruns Grain Company was not bonded and had not complied with the statute (G. S. 1935, ch. 34, art. 2) so as to become a public warehouseman. Under that statute and our decisions (*Kipp v. Goffe & Carkener*, 144 Kan. 95, 58 P. 2d 102; *Green v. Fortune*, 151 Kan. 598, 100 P. 2d 631, and *Schmitz v. Stockman*, 151 Kan. 891, 897, 101 P. 2d 962) all transactions here involved were sales and so far as questions of agency are concerned no room exists for differentiation. Liability depends not on the character of the transaction but the authority, if any, conferred by the principal under the evidence presented to the trial court.

Appellant strenuously insists the evidence which we have related discloses agency, both actual and ostensible. In support of his position he cites but three cases. They are, *Cain v. Wallace*, 46 Kan. 138, 26 Pac. 445; *Aultman v. Knoll*, 71 Kan. 109, 79 Pac. 1074, and *Sinclair Refining Co. v. Vaughn*, 135 Kan. 82, 9 P. 2d 995. When carefully analyzed it appears that each deals with questions pertaining to the scope of an agent's authority. To illustrate, in the Cain case it is stated the alleged agent was so recognized by his principal; in the Aultman case the agent testified he represented his principal in the transaction in controversy; while in the Sinclair Refining case the contract of agency was in writing and the fact of

agency conceded. The principles enunciated in such decisions are sound. The same is true of the general principles announced in the well-established law treatises to which appellant also refers. But we do not find them helpful here. What we are concerned in is, not what was the scope of the authority conferred on an agent, but whether there was evidence tending to establish the fact the relationship of principal and agent existed at all during the time of the transacting of the business which led to the institution of this lawsuit.

Exhaustive as our examination of the record has been we fail to find any tangible evidence that in the purchasing of grains, coal and feeds, Jesse Bruns was the agent of either of his codefendants. His testimony in its entirety amounted to a denial that such a relationship existed and no one gainsaid his version. Moreover, no witness testified to a state of facts justifying the conclusion either of the defendants sought to be charged as principals had intentionally or by want of ordinary care led the plaintiff or his assignors to believe he was authorized to act as their agent in the purchase of grain. Nor does the record disclose any witness dealt with him as agent on the strength of such relationship or was justified in presuming its existence. With respect to the Kansas Elevator Company what the evidence does disclose is that it had entered into an arrangement with Jesse Bruns to stake him in the buying of grain—a not uncommon occurrence in Kansas—with no right to direct his operations except as to the shipping of grain for which it had advanced the money, or to share in the profits, and no thought or intention of assuming liability for his debts. So far as Reno Bruns is concerned it reveals that from and after the fall of 1938 he simply rented the building and equipment which he owned on an agreed rental basis with no control over the business whatsoever. True enough, there may be found some isolated bits of testimony which might, if the trial court had been permitted to indulge in speculation and conjecture and disposed to give them a forced, strained or distorted, construction, give rise to a suspicion the parties had some arrangement other than that disclosed by the evidence. Even so, there is nothing in any of that testimony sufficient to raise a presumption or inference such a situation existed. The trial court was not permitted to speculate or surmise. It could not assume the existence of facts not proved by appellant in support of his cause. All it could do was to pass upon the evidence before it. That evidence in its opinion, and in ours as well, failed to establish the existence of agency, either actual or ostensible.

Much to our surprise a search of the authorities discloses few decisions dealing with facts, circumstances and issues, similar to those involved in the instant proceeding. Perhaps nearest in point is our own case of *Sheerer v. Kanavel,* 106 Kan. 220, 187 Pac. 658. While it lacks some factual features, it possesses many of like nature and the issues involved are almost identical in character. We regard it as a precedent which, if not entirely determinative, certainly fortifies and is sound authority for the conclusion heretofore announced.

We turn now to consideration of other arguments advanced by appellant in support of his position but which we have regarded as of minor importance in reaching our decision.

In what is an apparent attempt to bolster the evidence our attention is directed to a remark made by counsel for defendant, The Kansas Elevator Company, in his opening statement. It is urged the remark was such an admission as to do away with the necessity of proof of the existence of agency as alleged in the petition. We quote from a portion of the opening statement referred to, italicizing the portion relied on for purposes of information and emphasis. It read:

"We had no interest whatever in any grain that was delivered in that elevator except that which we paid for with our funds, because we were merely financing him in the purchase of grain. We did not finance him in any of his other operations. We financed him only in the grain that we purchased.

*"And if a farmer brought grain to him and he paid the farmer for that grain with our money by drawing this check on the Commerce Trust Company, then we owned that grain.* Then when it was sent to us and sold we got our regular commission for the sale of the grain, and all profits went to the Bruns elevator. We did not share in any profits of the business or any of the losses of the business. We had no agencies with either of the Bruns; they were not our agents in any regard. We were merely a financing institution, and that was all the interest that we had." (Emphasis supplied.)

However construed, we do not regard the emphasized remark as an admission of agency or as serving the purpose of doing away with the obligation resting on appellant to prove its existence. Clearly, if regarded as an admission it was not understandingly or intentionally made. The other quoted portions of the statement evidence that fact beyond peradventure of a doubt. This court is committed to the rule that where there is doubt or ambiguity in an opening statement the counsel who makes it is entitled to the presumption he did not intend to make an admission that would be fatal to his case. (See *Hall v. Davidson,* 73 Kan. 88, 84 Pac. 556;

*Smith v. Insurance Co.*, 108 Kan. 572, 196 Pac. 612; *Caylor v. Casto*, 137 Kan. 816, 22 ·P. 2d 417; *Speer v. Shipley*, 149 Kan. 15, 16, 17, 85 P. 2d 999, and *Northington v. Northington*, 158 Kan. 641, 643, 149 P. 2d 622.)

Heretofore we have limited our consideration to questions pertaining to the evidence as to agency. Appellant points out that Reno Bruns in his opening statement admitted, while Jesse Bruns testified, that prior to the fall of 1938 the Bruns Grain Company had been operated by them as general partners and that appellant's testimony was that he had done business with the company since it first engaged in the grain business in 1936. Conceding that to be the situation what is there in the evidence to establish liability on the part of Reno, who under the undisputed testimony had not had an interest in the business for more than three years prior to the date appellant sold and delivered his grain to Jesse under an agreement the latter was to pay him for it when the price was satisfactory? Appellant contends that in the face of such evidence Reno could not escape liability without showing he had given actual notice of his retirement from the firm and cites *Merritt v. Williams*, 17 Kan. 287, and *Woodard v. Timms*, 113 Kan. 413, 215 Pac. 456, as sustaining his contention. We do not agree. The Woodard case merely is authority for the proposition that one who had a tentative business arrangement with a partnership which was not consummated until after the firm was dissolved, if he had no notice of the dissolution, could hold the members of the partnership to the obligation as originally incurred, while the Merritt case simply holds that a single cash sale of cattle to a partnership firm dealing in cattle does not entitle the vendor to actual notice of the dissolution of the partnership or, through lack of such notice to hold both partners on a sale made two years thereafter, and eighteen months after the dissolution of the firm, when the actual dealings were had with only one of the former partners. Not cited by appellant but in line with the decision in the Merritt case is *Samuel Ach Co. v. Thorpe*, 115 Kan. 812, 224 Pac. 917. There the plaintiff sought to hold individual members of a partnership for goods sold to the partnership on credit after such persons had ceased to have any interest in the business. In determining liability under such circumstances we said that if the first bill of goods was sold to the partnership as originally created on credit the plaintiff was entitled to notice of the changed condition while if such shipment was not sold on credit plaintiff was not

entitled to notice of the changed partner relationship. Here the record is silent on the question of whether appellant's former dealing with the Bruns Grain Company involved the sale of wheat and, if so, whether it was sold to Jesse Bruns on the strength of his promise to pay for it under the circumstances heretofore related. Evidence of that character was required in order to make Reno Bruns liable on the premise he was a former member of the partnership and had not notified appellant of the partnership's dissolution. This evidence the appellant failed to produce. It follows the trial court's ruling on the demurrer was correct. This is true even though such ruling was based solely upon the ground appellant had failed to produce any evidence of agency. Reasons given for the trial court's decision became immaterial and need not be considered when it appears a correct judgment has been rendered under the facts and the law. (*State Highway Comm. v. Stadler,* 158 Kan. 289, 294, 148 P. 2d 296; *City of Wichita v. Boles,* 156 Kan. 619, 135 P. 2d 542, and *Nebraska Hardware Mut. Ins. Co. v. Johnson,* 156 Kan. 756, 137 P. 2d 125.)

One last contention challenges our attention. During the course of the trial the appellant, who had been recalled by his counsel for further direct examination, was asked the following question: "Did the Bruns elevator have a general reputation in that community of being owned by Jesse Bruns, Reno Bruns and the Kansas Elevator Company?" Objection was made to the question and sustained by the trial court on the ground it was leading. Appellant insists this ruling was erroneous. His position cannot be upheld. Clearly the question was leading and under our practice an objection thereto was properly sustained. Just why appellant did not pursue the subject further and reframe the question is not disclosed but he did not do so and he cannot now be heard to predicate error upon the trial court's ruling. It should be added that had he done so evidence of the character sought to be elicited would not have been admissible if proper objection had been made thereto. Evidence of general reputation to prove existence of the relationship of principal and agent is inadmissible unless it is accompanied by other evidence that the principal sought to be charged knew of the report and acquiesced in it (1 Mechem on Agency, 2d ed ., 210, § 290; 2 Am. Jur. 356, § 449; *Thompson v. Manufacturing Co.,* 60 W. Va. 42, 53 S. E. 908, 6 L. R. A., n. s., 311, and 3 Elliott on Evidence, 79, § 1638). Likewise, in the absence of other testimony, evidence of general reputation is inadmissible to establish the existence of a partnership (9 Encyc. of

Ev. 547; 40 Am. Jur. 188, § 85; 2 Greenleaf on Evidence, 16th ed., 464, § 483 and 47 C. J. 724, § 131). Here the appellant failed to produce any testimony of a character which, under the rules just stated, would make admissible evidence of general reputation as to the existence of either agency or partnership. The trial court did not err in excluding the testimony.

The judgment of the district court must be and is hereby affirmed.