No. 88,118

In the Matter of the APPEAL OF FAMILY OF EAGLES, LTD, from an Order of the Division of Taxation on Assessment of Compensating Use Tax.

66 P.3d 858

Opinion filed April 18, 2003.

*David J. Dunlap*, of the Kansas Department of Revenue, argued the cause and was on the briefs for appellant Kansas Department of Revenue.

*Richard D. Greene*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, argued the cause and was on the brief for appellee Family of Eagles, LTD.

The opinion of the court was delivered by

LUCKERT, J.:

This is an appeal from a notice of assessment of compensating use tax issued against Family of Eagles, LTD (FOE). The Kansas Department of Revenue (KDR) determined that FOE had a substantial nexus to Kansas justifying imposition of the duty to collect and remit tax payments required under the Kansas Compensating Tax Act, K.S.A. 79-3701 *et seq*. The Kansas Secretary of Revenue upheld the assessment, and FOE appealed to the Kansas Board of Tax Appeals (BOTA). BOTA found that FOE did not have a substantial nexus with the state of Kansas as required by the Commerce Clause of the United States Constitution and reversed the Secretary's determination.

KDR appeals to this court claiming (1) FOE's contacts in the state of Kansas, namely its use of independent sales representatives (ISR's), create a substantial nexus for imposing collection requirements under the Kansas Compensating Tax Act; (2) BOTA failed to make certain factual findings and other factual findings are not supported by substantial evidence; (3) BOTA improperly shifted the burden of persuasion to KDR; and (4) reasonable grounds for abating the penalties imposed by KDR do not exist.

The underlying facts are not in dispute. In the appeal to BOTA, the parties filed joint stipulations of fact, all but one of which was quoted by BOTA in its order. In summary, BOTA made the following factual findings based upon the stipulations:

FOE is a Texas corporation having two subsidiaries operating as selling branches for the corporate parent. FOE does not own property, real or personal, located in Kansas. It has no physical presence in Kansas except through its ISR's who are Kansas residents. FOE purchases coins, jewelry, and other products at wholesale and re-sells the products through commissioned ISR's. All sales are made through an ISR; there is no other solicitation through telemarketing, advertising, or catalog. Thus, FOE does not target a geographic area for sales; rather, sales follow where an ISR makes a contact. An ISR solicits retail purchase orders from customers on a one-on-one basis. The ISR presents the product through sales materials prepared by FOE, assists the customer in completing the purchase forms, and double checks the order form. The order is expressly subject to acceptance at the company's physical location in Texas. Many purchase orders are rejected for a variety of reasons, primarily paperwork errors. During the audit/assessment period, all retail purchase order forms for sales to Kansas residents had to include full or partial payment before FOE would process the purchase request. Once the order is accepted by FOE, the product is shipped from Texas directly to the consumer via a common carrier, typically Federal Express. The ISR does not handle the product or maintain inventory. While an ISR may purchase items, the ISR cannot resell those items.

The ISR's are solicited solely by word of mouth. There is no company solicitation or marketing plan targeting any particular demographic or geographical area. An ISR may be employed elsewhere or may at the same time represent other noncompeting companies and product lines. FOE does not control to whom or where an ISR may sell products. Thus, an ISR physically located in another state may sell to a Kansas resident and an ISR located in Kansas may sell to consumers in other states. The ISR does not have a sales quota or purchase requirements. The ISR is paid a commission on retail sales generated. A customer may subsequently elect to qualify as an ISR. In this way an ISR may build a sales organization and receive direct commissions from those sales he or she personally generates as well as indirect commissions from sales generated through the sales organization. If this election is

made, FOE requires that the sponsor expend substantial time and effort in supporting the downline to justify the payment of commissions on those retail sales indirectly generated. BOTA noted that this method of operation is similar to the structure of Amway, Herbalife, NuSkin, and Mary Kay. What differentiates FOE from those companies is that those companies' sales representatives are distributors who actually purchase products from the company for resale; ISR's do not.

The parties stipulated that, if FOE's sales to Kansas residents are determined to be subject to the Kansas Compensating Use Tax, then the amount of tax calculated by KDR for the amount of taxable sales provided to it by FOE as shown in the KDR's audit worksheets and on its assessment letter of September 18, 1998, is the correct amount of tax. KDR determined that FOE owed $30,372 in taxes for the 3-year period open to assessment under the applicable statute of limitations, plus interest and penalty.

BOTA adopted all of these stipulated facts but rejected one stipulation which stated: "During the audit/assessment period, ISR's may be involved in the shipping of items, including but not necessarily limited to checking on packages shipped by the Taxpayer but not received by the customer in a timely fashion." BOTA noted that Jairl Dowell, general counsel for FOE, testified that the ISR's have nothing to do with the shipping process. Once the sale is accepted in Texas, FOE's customer service department in Texas ships the product by interstate common carrier directly to the address specified by the customer. According to his testimony, an ISR would only contact a customer service representative if his own or a family member's shipment did not arrive. Based upon this evidence, BOTA determined that the ISR's are not required to perform any services after the sale.

BOTA found that FOE satisfied the definition in K.S.A. 79-3702(h) of a "retailer doing business in this state." BOTA also found that the ISR's are implied agents or representatives of FOE. However, BOTA determined that it was overly simplistic to say that having agents located in Kansas was sufficient to satisfy the nexus requirement of the Commerce Clause. One member of BOTA dissented, stating that the establishment of a market in Kan-

sas through the use of ISR's in the state was sufficient to satisfy the Commerce Clause requirement.

## STANDARD OF REVIEW

BOTA is a specialized agency and is considered to be the paramount taxing authority in Kansas. See *In re Tax Appeal of the City of Wichita*, 274 Kan. 915, 59 P.3d 336 (2002). Its decisions are given great weight and deference when it is acting in its area of expertise. *In re Tax Appeal of Intercard, Inc.*, 270 Kan. 346, 349, 14 P.3d 1111 (2000). However, if BOTA's interpretation of law is erroneous as a matter of law, appellate courts will take corrective steps. 270 Kan. at 349.

BOTA's orders are subject to judicial review under the Kansas Act for Judicial Review and Civil Enforcement of Agency Action (KJRA), K.S.A. 77-601 *et seq*. K.S.A. 77-621 sets forth our scope of review and provides that unless "this act or another statute provides otherwise: (1) The burden of proving the invalidity of agency action is on the party asserting invalidity." In this case, BOTA granted FOE's request for abatement or refund of the sales and use taxes and KDR challenges that order. Thus, KDR bears the burden of proving BOTA's decision erroneous. *Cf. In re Tax Appeal of the City of Wichita*, 274 Kan. at 923 (City challenged BOTA's order to pay sales tax, thus bore burden to prove BOTA's action erroneous). KDR seeks review under K.S.A. 77-621(c)(4), arguing BOTA erroneously interpreted or applied the law; K.S.A. 77-621(c)(7), arguing BOTA's findings are not supported by substantial evidence; and K.S.A. 77-621(c)(8), arguing BOTA's order was unreasonable, arbitrary, and capricious. Since KDR challenges BOTA's conclusion that FOE does not have a sufficient nexus with Kansas to impose tax collection obligations, the principle issue presented is whether BOTA erroneously interpreted or applied the law in an unconstitutional manner. This is an issue of law over which this court's review is unlimited. See *In re Tax Appeal of Scholastic Book Clubs, Inc.*, 260 Kan. 528, 536, 920 P.2d 947 (1996).

## KANSAS' COMPENSATING USE TAX

The Kansas compensating use tax is a tax levied for the "privilege

of using, storing or consuming within" Kansas any tangible personal property. K.S.A. 2002 Supp. 79-3703. Historically, states with a retailer's sales tax have imposed a corollary use tax to enhance revenue, diminish taxpayer avoidance of sales taxes, and equalize the competitive parity of local and out-of-state retailers. *National Geographic Society v. Cal. Equalization Bd.*, 430 U.S. 551, 555, 51 L. Ed. 2d 631, 97 S. Ct. 1386 (1977). In Kansas, "[a]ll property purchased or leased within or without this state and subsequently used, stored or consumed in this state" is subject to the tax if the property would have been subject to the Kansas retailers' sales tax had the transaction been wholly within Kansas. K.S.A. 2002 Supp. 79-3703. It is prima facie evidence that the property was sold for use in Kansas if the property was sold for delivery in the state. K.S.A. 79-3703a.

The purchaser is responsible for payment of the tax. However, given the impracticality of collection from the multitude of individual purchasers, the collection obligation is imposed upon the retailer. *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 343, 98 L. Ed. 744, 74 S. Ct. 535 (1954). "Every retailer doing business in this state and making sales of tangible personal property for use, storage or consumption in this state, not exempted under the provisions of this act, shall at the time of making such sales, whether within or without the state, collect the tax." K.S.A. 79-3705c. K.S.A. 79-3702(h) defines a "retailer doing business within [Kansas]" that has the duty to collect the tax as:

"any retailer: (1) [h]aving or maintaining within this state, directly or by a subsidiary, an office, distribution house, sales house, warehouse or other place of business, or *any agent or other representative operating within this state under the authority of the retailer or its subsidiary*, irrespective of whether such place of business or agent is located here permanently or temporarily, or whether such retailer or subsidiary is admitted to do business within the state." (Emphasis added.)

In determining FOE was a retailer doing business in Kansas, BOTA determined the ISR's were agents operating under the authority of FOE. FOE did not cross-appeal those findings.

## COMMERCE CLAUSE

Not every out-of-state retailer doing business in Kansas may con-

stitutionally be made liable for payment of the use tax. *National Geographic Society*, 430 U.S. at 555. The imposition of the tax must satisfy the Due Process Clause of the Fourteenth Amendment and the dormant Commerce Clause of Article I, § 8, cl. 3 of the United States Constitution. The requirements under the Due Process and Commerce Clauses are phrased similarly, and, before *Quill Corp. v. North Dakota*, 504 U.S. 298, 312, 119 L. Ed. 2d 91, 112 S. Ct. 1904 (1992), were seen as substantially the same. In *In re Intercard*, this court thoroughly analyzed the long line of United States Supreme Court and state court decisions reviewing substantial nexus and that discussion will not be repeated here. See 270 Kan. at 352-64. However, some discussion is necessary in order to analyze the facts presented in this case.

In *Quill Corp.*, the United States Supreme Court determined that the nexus requirements of the Due Process and Commerce Clauses are not identical. The distinction arises because of the differing constitutional concerns and policies. At the heart of a Due Process Clause analysis is a concern of fundamental fairness, positing the question of whether the taxpayer's contacts with a state are sufficient enough to legitimate the state's exercise of power. Under the requisite minimum contacts analysis, notice or fair warning are the "analytic touchstone of due process nexus." 504 U.S. at 312. In contrast, the constitutional concerns and policies stemming from the Commerce Clause are structural in nature and focus on the effects of state regulation on the national economy and, specifically, any burden on interstate commerce caused by a state tax obligation. 504 U.S. at 312; *In re Intercard*, 270 Kan. at 351. A state tax will withstand a challenge under the Commerce Clause as long as it "[1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State." *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 51 L. Ed. 2d 326, 97 S. Ct. 1076 (1977).

In this case, FOE does not assert a due process claim or take issue with any prong of the *Complete Auto Transit* test except the first, whether FOE has a substantial nexus with Kansas. In providing guidance on determining what constitutes a substantial nexus,

the Supreme Court in *Quill*, reaffirmed the so-called "bright-line test" of *Nat. Bellas Hess v. Dept. of Revenue*, 386 U.S. 753, 18 L. Ed. 2d 505, 87 S. Ct. 1389 (1967), which requires that the taxpayer have a physical presence in the taxing state. Application of the test created a safe harbor for mail-order vendors whose only connection in the taxing state is by common carrier or United States mail. *Nat. Bellas Hess*, 386 U.S. at 758. FOE does not claim it falls within this safe harbor but argues its contacts with Kansas are still insufficient to impose an obligation of tax collection.

In *Quill*, the United States Supreme Court ruled that licensing software to users and distributing a few floppy diskettes in the taxing state through a common carrier "might constitute some minimal nexus" but did not meet the "substantial nexus" requirement of the Commerce Clause. 504 U.S. at 315. The Supreme Court reaffirmed that a "slightest presence" was not an appropriate standard. 504 U.S. at 314-15. The Court provided some guidance on when the presence may satisfy the requirement:

"Whether or not a State may compel a vendor to collect a sales or use tax may turn on the presence in the taxing State of a small sales force, plant, or office. Cf. *National Geographic Society v. California Bd. of Equalization*, 430 U.S. 551 (1977); *Scripto, Inc. v. Carson*, 362 U.S. 207 (1960)." *Quill*, 504 U.S. at 315.

The two cases cited by the United States Supreme Court as support for this statement are helpful to the analysis of whether FOE had a substantial nexus with Kansas to justify imposition of use tax collection obligations. In *Scripto v. Carson*, 362 U.S. 207, 4 L. Ed. 2d 660, 80 S. Ct. 619 (1960), the United States Supreme Court held that Florida could constitutionally impose upon a Georgia seller the duty of collecting a state use tax upon the sale of goods shipped to customers in Florida. In that case, Scripto had written contracts with 10 Florida jobbers, who conducted continuous local solicitation in Florida. The jobbers solicited orders in Florida, forwarded them to Georgia for shipment, but did not collect payment for the order from the customer. The contract between Scripto and the jobbers described the jobbers as independent contractors. The jobbers were not required to work exclusively for the Georgia retailer and received only commission payments.

The Court in *Scripto* characterized the fact that the representatives were not regular and exclusive employees of the Georgia retailer as "a fine distinction . . . without Constitutional significance." 362 U.S. at 211.

The dissenting BOTA opinion and KDR rely heavily upon *Scripto* as support for the view that the ISR's provide a substantial nexus with Kansas to satisfy Commerce Clause requirements. On the other hand, in the initial BOTA order, the majority did not rely at all on *Scripto* to analyze the activity of FOE's ISR's. Instead, the majority found "the activity of the ISR's to be greater than the agents of *Intercard, Inc.*, but . . . less than the Kansas teachers of *Scholastic Book* . . . who sold books, distributed catalogs, mailed orders and payments to the company, received the materials, and distributed the materials to the proper Kansas students." In ruling on KDR's motion for reconsideration, BOTA addressed KDR's reliance on *Scripto* as follows:

"Contrary to the assertion of the Department, the Board finds that *Scripto* is not virtually the same case as the present matter. *Scripto* involved a Georgia corporation with Florida wholesalers selling only to Florida residents located within defined sales territories. The Taxpayer is a Texas corporation with ISR's throughout the United States able to take orders from anywhere in the United States. The Kansas ISR's are not limited to defined sales territories within the State of Kansas. Because the facts of the present matter and *Scripto* are not identical, the Board finds the *Scripto* decision instructional, but not decisive. The Board concludes that the Taxpayer's activities within the State of Kansas do not constitute a substantial nexus with the state and sustains its original Order . . . ."

To the extent the BOTA majority was distinguishing *Scripto* because the Kansas ISR's do not have defined territories limited to Kansas, the distinction is one without constitutional significance. The sale of product by a Kansas ISR to an out-of state consumer is not subject to the Kansas sales or use tax. K.S.A. 2002 Supp. 79-3603(a); K.S.A. 2002 Supp. 79-3703. See *Miller Bros. Co.*, 347 U.S. at 343-44. Hence, there is no impediment imposed upon interstate commerce. Similarly, the fact that there may be sales in Kansas as a result of the solicitation of nonresident ISR's does not create a constitutional impediment. "The burden of the tax is placed on the ultimate purchaser . . . and it is he who enjoys the use of the

property, regardless of its source." *Scripto*, 362 U.S. at 211. "[T]he mere fact that property . . . has come into an owner's possession as a result of interstate commerce does not diminish the protection which he may draw from a State to the upkeep of which he may be asked to bear his fair share." *General Trading Co. v. Tax Comm'n*, 322 U.S. 335, 338, 88 L. Ed 1309, 64 S. Ct. 1028 (1944).

Nor, as the BOTA majority has suggested, does the lack of defined sales territories negate the physical presence which creates a substantial nexus with Kansas sufficient to justify requiring FOE to collect the tax. While the record lacks clarity regarding the extent or amount of sales by Kansas ISR's to Kansas residents, no one has suggested that the Kansas ISR's never sell to Kansas residents. The ISR's do sell to Kansas residents and in doing so help to develop FOE's Kansas market.

The United States Supreme Court has counseled that an analysis of whether a tax violates the Commerce Clause requires examination of the practical effect of imposition of the tax. *Quill*, 504 U.S. at 310 (quoting *Complete Auto*, 430 U.S. at 279). In this case, as a practical matter, there is no constitutionally significant distinction between Scripto's independent contractor sales force and FOE's sales force of ISR's in Kansas.

The majority BOTA opinion and FOE conclude that the two post-*Quill* Kansas cases require a conclusion that there is not a substantial nexus between FOE and Kansas. In the most recent Kansas case, *In re Intercard*, this court thoroughly analyzed a long line of United States Supreme Court and state court decisions and then applied the various holdings to the situation where a Missouri based company, Intercard, provided point-of-sale data cardreaders to photocopy stores in Kansas such as Kinko's. The store then either sold or gave these cards to its customers for payment of photocopies. The cardreaders were delivered to Intercard's customers by United Parcel Service. Periodically, Intercard's customers requested that Intercard send a service technician to electronically wire the cardreader for installation. In affirming BOTA's order abating the assessed sales and use tax, this court held:

"The parties stipulated that Intercard was not incorporated or registered as a foreign corporation doing business in Kansas; all contracts and sales occurred

outside of Kansas; and Intercard had no offices or employees in Kansas. BOTA found that Intercard's 11 incursions to install cardreaders in Kansas were isolated, sporadic, and insufficient to establish a substantial nexus to Kansas We agree and affirm BOTA's order abating the assessed sales and use tax." 270 Kan. at 364.

In *In re Scholastic Book Clubs*, 260 Kan. 528, this court considered whether Scholastic Book Clubs Inc. (Scholastic) had established a sufficient nexus with Kansas to subject it to the compensating use tax. Scholastic operated an out-of-state based business which sold books ordered through Kansas school teachers. We found that by soliciting orders, accepting payments, and shipping merchandise to Kansas teachers for distribution to the student purchasers, the teachers acted as Scholastic's implied agents and a substantial nexus existed with Kansas. 260 Kan. at 546. In reaching that decision, this court relied on *Quill* and *Bellas Hess* and also extensively analyzed a factually similar case from California, *Scholastic Book Clubs, Inc., v. State Bd. of Equalization*, 207 Cal. App. 3d 734, 255 Cal. Rptr. 77 (1989), which this court found persuasive. The California case, in turn, relied upon *Scripto*, a point we noted by stating:

"The California court found that the *Scholastic* case was more similar to *Scripto* than to *Nat. Bellas Hess*. It concluded that although the teacher did not have written agency agreements with the retailer, they served the same function as did the Florida jobbers in *Scripto*—obtaining sales in California from local customers for a foreign corporation." *In re Scholastic Book*, 260 Kan. at 543.

FOE and the BOTA majority distinguish this case from *In re Scholastic Book* and *Scripto* because ISR's do not accept orders, distribute merchandise, or perform service after the sale. In *Scripto*, the sales force solicited sales and forwarded the orders to Georgia for shipment. The United States Supreme Court explained the Scripto sale force's role as follows:

"Each order is to be signed by the solicitor as a 'salesman'; however, he has no authority to make collections or incur debts involving appellant. Each salesman is furnished catalogs, samples, and advertising material, and is actively engaged in Florida as a representative "of Scripto for the purpose of attracting, soliciting and obtaining Florida customers" for its mechanical advertising specialties. Orders for such products are sent by these salesmen directly to the Atlanta office for acceptance or refusal. If accepted, the sale is consummated there and the salesman is paid his commission directly. No money passes between the purchaser and the

salesman—although the latter does occasionally accept a check payable to the appellant, in which event he is required to forward it to appellant with the order." 362 U.S. at 209-10.

Thus, the role of the sales force in *Scripto* and the ISR's in this case is very similar. As quoted above, our decision in *In re Scholastic Book* and the California court's *Scholastic* decision were largely based upon the precedence of *Scripto*. Therefore, it cannot be inferred that our holding in *In re Scholastic Book* was keyed upon the requirement that the teachers distributed the books, were involved in quality control, or provided customer service after the sale. The focus of our holding in *In re Scholastic Book* was that the teachers were "obtaining sales . . . from local customers for a foreign corporation." 260 Kan. at 543. We concluded: "Scholastic's use of Kansas teachers to sell its product to Kansas students provides a substantial nexus with the state of Kansas." *In re Scholastic Book*, 260 Kan. at 546. In contrast, we found that Intercard's actions after the sale were not sufficient and noted that all contracts and sales occurred out of Kansas. Intercard's only presence in Kansas related to post-sale service, and that physical presence was "isolated, sporadic, and insufficient to establish a substantial nexus with Kansas." *In re Intercard*, 270 Kan. at 364.

In this case, FOE has a physical presence in Kansas through its ISR's and that presence creates a substantial nexus with the state of Kansas. Requiring FOE to collect and remit the use tax does not violate the Commerce Clause of the United States Constitution.

## OTHER ISSUES AND QUESTION OF APROPRIATENESS OF PENALTY

KDR raises several other issues regarding BOTA's findings. In essence, KDR sought findings which it argues bolstered the finding of a substantial nexus. Since we have found that a substantial nexus existed, there is no need to address these additional arguments.

FOE raised an alternative argument before BOTA that if it owed the tax, it did not owe the penalty. FOE does not dispute the amount of tax owed but questions the assessment and amount of the penalty. Because BOTA did not uphold the assessment, it did

not address the penalty issue. On appeal, KDR asks this court, if it reverses BOTA's order, for either (1) a determination of whether the penalty imposed was correct or within statutory limitations, or (2) to remand the issue to BOTA for further determination. We find that remand is the appropriate relief on the penalty issue to allow BOTA to review the issue. *Cf. In re Tax Appeal of Broce Constr. Co.*, 27 Kan. App. 2d 967, 978, 9 P.3d 1288 (2000), *rev. denied*, 270 Kan. 898 (2000) (unresolved issue concerning net operating losses remanded for possible recalculation).

Reversed and remanded.

ABBOTT, J., not participating.

DAVID S. KNUDSON, J., assigned■