[No. A040915. First Dist., Div. Five. Jan. 30, 1989.]

SCHOLASTIC BOOK CLUBS, INC., Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

COUNSEL

Richard E. Levine and Fenwick, Davis & West for Plaintiff and Appellant.

Prentiss Willson, Jr., Morrison & Foerster, Judith B. Tucker, Bennett J. Bernblum and Wiggin & Dana as Amici Curiae on behalf of Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Timothy Laddish and Richard F. Finn, Deputy Attorneys General, for Defendant and Respondent.

OPINION

HANING, J.—Plaintiff/appellant Scholastic Book Clubs, Inc. appeals a summary judgment in favor of defendant/respondent State Board of Equalization in appellant's action for refund of use taxes. Appellant contends there is an insufficient nexus between its out-of-state business and its California contacts to permit imposition of a use tax. We affirm.

Appellant is a corporation organized and existing under the laws of the state of New Jersey and engaged in the interstate business of mail order book sales. It maintains a warehouse in Jefferson City, Missouri. It has no physical facility, bank account, or regular employees in California. It conducts its business by distributing catalogs through the mail to teachers and librarians in elementary and high schools throughout the United States. It mails its catalogs to teachers and librarians who have previously placed orders or specifically requested catalogs. It also purchases mailing lists from third parties and maintains address lists of schools. If it does not know the name of a teacher, it sends the catalog to the grade or classroom, for instance: "Third Grade Teacher."

Each catalog includes approximately 30 offer sheets listing books and other items available for purchase. Teachers are under no obligation to distribute the offer sheets. A typical annual response rate to the catalogs is 14.6 percent. Teachers who elect to do so distribute the offer sheets to their students. The student then makes his or her selections and pays the teacher for the items selected. Method of payment varies. Some teachers have checks made out to them, and then write a single personal check for the total order. Some have the parents make out checks to appellant. Some have the check made on the school's account. The teacher consolidates the orders and payments received and submits full payment and a single order to appellant in the name of the teacher. Orders are filled and shipped from the Missouri warehouse to the teacher making the order, who then distributes the materials to the students who ordered them.

Appellant has a "premium" program to encourage teachers and librarians to place orders. They are given "bonus points" based on the size of their orders, which they may use to obtain merchandise from a gift catalog. The items in the gift catalog may be used either for classroom or personal use. Among the items available from the gift catalog are pocket calculators, books, audio cassettes, cameras, coffee makers, television sets, video cassette recorders, and microwave ovens.

Respondent assessed appellant a use tax deficiency based on its California sales for the period of September 1, 1980, to March 31, 1983. Appellant paid under protest and brought the instant action for refund.

The rules for review of summary judgment are well established and require no repetition. (See *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953]; 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 274 et seq.) It suffices to say that if the record reflects no triable issues of material fact and that the moving party is entitled to judgment as a matter of law, the motion must be granted. (Code Civ. Proc., § 437c, subd. (c).)

A use tax is an excise tax "imposed on the storage, use, or other consumption in this state of tangible personal property purchased from any retailer . . . for storage, use, or other consumption in this state." (Rev. & Tax. Code, § 6201.) Every "retailer engaged in business in this state and making sales of tangible personal property for storage, use, or other consumption in this state . . . shall, at the time of making the sales or, if the storage, use, or other consumption of the tangible personal property is not then taxable hereunder, at the time the storage, use, or other consumption becomes taxable, collect the tax from the purchaser and give to the purchaser a receipt therefor . . . . 'Retailer engaged in business in this state' as used in this . . . section means and includes any of the following: [¶] (b) Any retailer having any representative, agent, salesman, canvasser, or solicitor operating in this state under the authority of the retailer or its subsidiary for the purpose of selling, delivering, or the taking of orders for any tangible personal property." (Rev. & Tax. Code, § 6203, subd. (b).) A foreign retailer who fails to collect the amount of use taxes due becomes indebted to the state for that sum. (Rev. & Tax. Code, § 6204.)

██ Appellant first contends it is statutorily exempt, claiming the teachers are not "operating in this state under the authority of [appellant] for the purpose of selling, delivering, or the taking of orders for any tangible personal property." (Rev. & Tax. Code, § 6203, subd. (b).) Appellant stresses the fact that the teachers have no initial obligation to act, and argues therefrom that they are not acting under its authority. We conclude otherwise. ██ ██ ██ The teachers are certainly not acting under anyone else's authority, and once they undertake to act, they are obviously acting under appellant's authority,[1] and certainly as appellant's agents or representatives. "An agent is one who represents another, called the principal, in dealings with third persons." (Civ. Code, § 2295.) ██ The creation of an agency relationship is not dependent upon the existence of a written agreement. The relationship may be implied based on conduct and

---

[1] Black's Law Dictionary (5th ed. 1979) page 121, defines "authority" as, "Permission"; also as, "The power delegated by a principal to his agent"; and, "The lawful delegation of power by one person to another." Appellant must concede the teachers acted with its permission, and derived the "power" or "authority" to solicit orders, collect payment and distribute merchandise from appellant.

circumstances (*Thayer* v. *Pacific Elec. Ry. Co.* (1961) 55 Cal.2d 430, 438 [11 Cal.Rptr. 560, 360 P.2d 56]; *Pollack* v. *Lytle* (1981) 120 Cal.App.3d 931, 940 [175 Cal.Rptr. 81]), as well as by ratification. (Civ. Code, §§ 2307, 2310; *Rakestraw* v. *Rodrigues* (1972) 8 Cal.3d 67, 73 [104 Cal.Rptr. 57, 500 P.2d 1401].) ■ By accepting the orders, the payment and shipping the merchandise, appellant clearly and unequivocally ratified the acts of the teachers and confirmed their authority as appellant's agents or representatives.

■ Although the constitutionality of use taxes in general is well settled (see *National Geographic* v. *Cal. Equalization Bd.* (1977) 430 U.S. 551, 555 [51 L.Ed.2d 631, 636-637, 97 S.Ct. 1386]), such taxes may not be imposed unless a sufficient nexus exists between the foreign corporation and the taxing state. (*Id.,* at p. 556 [51 L.Ed.2d at p. 637].) "Generally speaking, the taxing state must have a substantial interest in the transactions in order to justify imposition of the tax. This interest is measured by the extent and nature of the contacts between the state and the foreign corporation (such as the presence of agents of the corporation within the state), and the benefits conferred on the corporation by the state." (*Illinois Commercial Men's Assn.* v. *State Bd. of Equalization* (1983) 34 Cal.3d 839, 844 [196 Cal.Rptr. 198, 671 P.2d 349].)

The requisite nexus has generally been found when the foreign retailer arranges for local representatives to make sales within the taxing state. (See, e.g., *Tyler Pipe Indus.* v. *Washington Dept. of Revenue* (1987) 483 U.S. 232, 249-250 [97 L.Ed.2d 199, 215, 107 S.Ct. 2810, 2821]; *Scripto* v. *Carson* (1960) 362 U.S. 207 [4 L.Ed.2d 660, 80 S.Ct. 619]; *General Trading Co.* v. *Tax Comm'n.* (1944) 322 U.S. 335 [88 L.Ed. 1309, 64 S.Ct. 1028]; *Felf & Tarrant Co.* v. *Gallagher* (1939) 306 U.S. 62 [83 L.Ed. 488, 59 S.Ct. 376].) However, when the foreign retailer has no direct personal contacts in the taxing state or does its business only by mail, the nexus does not usually exist. In *Miller Bros. Co.* v. *Maryland* (1954) 347 U.S. 340 [98 L.Ed. 744, 74 S.Ct. 535], for example, the United States Supreme Court held that Maryland could not tax a Delaware merchandiser that did not accept orders by mail or telephone, that sold only to customers who came into its Delaware store, and made no solicitations other than newspaper, radio, and occasional direct mail advertising. The occasional delivery of goods purchased at its Delaware store to Maryland locations by common carrier or its own truck was not deemed sufficient to create the minimum connection necessary for the imposition of use taxes. (*Id.,* at p. 347 [98 L.Ed. at pp. 748-749].)

In *Nat. Bellas Hess* v. *Dept. of Revenue* (1967) 386 U.S. 753 [18 L.Ed.2d 505, 87 S.Ct. 1389], the case on which appellant most strongly relies, the high court invalidated an Illinois tax on a Missouri merchandiser that

maintained no physical facility or advertising in Illinois, and had no "'agent, salesman, canvasser, solicitor or other type of representative [in Illinois] to sell or take orders, to deliver merchandise, to accept payments, or to service merchandise it sells . . . .'" (*Id.,* at p. 754 [18 L.Ed.2d at p. 506].) The seller's only contacts with Illinois were through the mail or common carrier. Twice a year it mailed catalogs to its active or recent customers throughout the country, supplemented by advertising "flyers" occasionally mailed to past and potential customers. All customers mailed their orders directly to the Missouri plant, from which the goods were sent directly to the customer by mail or common carrier. "[T]he Court has never held that a State may impose the duty of use tax collection and payment upon a seller whose only connection with customers in the State is by common carrier or the United States mail." (*Id.,* at p. 758 [18 L.Ed.2d at p. 509].)

Respondent relies on *Scripto* v. *Carson, supra,* 362 U.S. 207. In *Scripto,* a Georgia retailer had written contracts with 10 Florida jobbers, who solicited orders in Florida, forwarded the resulting orders to Georgia for shipment, but collected no payment from the customer. The jobbers were described in their contracts as "independent contractors," were paid solely on commission, and did not work exclusively for the Georgia retailer. The United States Supreme Court concluded that the requisite nexus was present to allow Florida to impose a use tax on the Georgia retailer, insofar as the sales were made in Florida by local representatives who conducted all their business (soliciting sales and forwarding the orders) in the taxing state. The fact that the representatives were not regular and exclusive employees of the Georgia retailer was characterized as "a fine distinction . . . without constitutional significance. The formal shift in the contractual tagging of the salesman as 'independent' neither results in changing his local function of solicitation nor bears upon its effectiveness in securing a substantial flow of goods into Florida." (*Id.,* at p. 211 [4 L.Ed.2d at p. 664].) The court distinguished *Scripto* from *Miller Bros.* by noting that the Delaware merchandiser in *Miller Bros.* had no solicitors in Maryland, there was no exploitation of the Maryland consumer market, no regular, systematic displaying of the Delaware merchandiser's products by catalogs, samples, and the like in Maryland, and the goods were actually sold to Maryland residents personally present in Delaware, as opposed to the Delaware merchandiser going into Maryland to make its sales. Finally, there was no way the Delaware merchandiser could know that goods sold at its Delaware store for cash were to be used and enjoyed in Maryland. (*Id.,* at pp. 211-212 [4 L.Ed.2d at pp. 663-665].)

■ The instant case is more analogous to *Scripto* than to *National Bellas.* Although the teachers herein do not have written agency agreements

with appellant, they serve the same function as did the Florida jobbers in *Scripto*—obtaining sales within California from local customers for a foreign corporation. In fact, they do more. Unlike the Florida jobbers, the California teachers collect payment from the purchasers, and receive and distribute the merchandise. Appellant not only relies, but in fact depends on the teachers to act as its conduit to the students. Moreover, there is an implied contract between appellant and the teachers—appellant rewards them with the bonus points for merchandise if they obtain and process the orders. The bonus points are similar to the Florida jobbers' commissions in *Scripto*; the more sales the teachers make, the more bonus points they earn.

Appellant minimizes the payment of the bonus points, claiming the teachers and librarians do not and cannot earn their living by facilitating the sales for appellant, unlike the jobbers in *Scripto*. However, neither the form of the remuneration, the amount thereof, nor the fact that the teachers and librarians were not formally employed by, or dependent upon appellant for their primary income has any legal significance in determining whether they acted as appellant's representatives in soliciting orders for appellant's products in California. Further, unlike the Illinois customers in *National Bellas,* the students here are not solicited directly through the mail. The only way a student can order books is through a local intermediary—his or her teacher. Appellant is thus exploiting or enjoying the benefit of California's schools and employees to obtain sales.

We conclude that appellant's use of California's teachers and school librarians to solicit sales from California students constitutes a sufficient nexus for the imposition of the use taxes challenged herein.

The judgment is affirmed.

Low, P. J., and King, J., concurred.