# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### December 13, 2011 Session

## SCHOLASTIC BOOK CLUBS, INC. v. REAGAN FARR, COMMISSIONER OF REVENUE, STATE OF TENNESSEE

**Direct Appeal from the Chancery Court for Davidson County**
**No. 09-587-II      Carol L. McCoy, Chancellor**

---

**No. M2011-01443-COA-R3-CV - Filed January 27, 2012**

---

The trial court determined that the Commissioner of Revenue's assessment of sales and use taxes against out-of-state Plaintiff for sales to customers in Tennessee was not permitted under the Commerce Clause of the United States Constitution, and entered judgment in favor of Plaintiff. The Commissioner of Revenue appeals. We reverse and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter, William E. Young, Solicitor General and Brian J. Ramming, Assistant Attorney General, for the appellants, Reagan Farr, Commissioner of Revenue, State of Tennessee.

David W. Bertoni, Lewiston, Maine, and Charles A. Trost, G. Michael Yopp and Christopher A. Wilson, Nashville, Tennessee, for the appellee, Scholastic Book Clubs, Inc.

## OPINION

This dispute concerns the assessment of sales and use taxes pursuant to Tennessee Code Annotated §§ 67-6-101 to 907 (2006 & Supp. 2010) against an out-of-state commercial actor. The sole issue raised on appeal is whether Plaintiff Taxpayer's connections with Tennessee constitute a "substantial nexus" such that Tennessee's assessment sales and use taxes against Taxpayer are consistent with the Commerce Clause of the United States Constitution.

The relevant facts of this lawsuit are not in dispute. Plaintiff/Taxpayer Scholastic Book Clubs, Inc. ("SBC") is a Missouri corporation that markets and sells books and other publications and products to teachers and students at nursery, primary, and secondary schools across the United States. It also sells books to home-schooled children and their parents. SBC has been engaged in this business for over fifty years. During the audit period January 1, 2002, to May 31, 2008, approximately 8,000 Tennessee schools participated in the SBC program, and SBC's sales in Tennessee were valued in excess of $34 million. SBC does not have real or personal property or employees in Tennessee.

In August 2008, the Tennessee Department of Revenue ("the Department') notified SBC that it had performed an audit of SBC's records, and that SBC was liable for Tennessee sales and use taxes in the amount of $3,647,908.45. The Department further assessed a penalty in the amount of $905,239.76 against SBC, and interest in the amount of $1,151,939.31. The Department asserted SBC was liable for taxes, penalties and interest totaling $5,705,087.52.

SBC requested an informal conference, which was held in December 2008. By letter dated January 21, 2009, the Commissioner of Revenue ("the Commissioner") advised SBC that it had determined that SBC was liable for the assessed sales and use taxes. The Commissioner asserted that the facts established that teachers who participated in SBC's program acted as agents for SBC. The Commissioner noted that at least two other jurisdictions had established that an agency relationship existed between SBC and participating teachers, although three jurisdictions had concluded otherwise. The Commissioner asserted that an implied agency relationship existed, and that teachers acted "like any other sales agent" when they "follow[ed] the procedures that [SBC] established for placing, distributing, and returning orders." The Commissioner advised SBC that it could file an action to challenge the assessment within 90 days.

In March 2009, SBC filed an action against the Commissioner in the Chancery Court for Davidson County, challenging the Department's assessment pursuant to Tennessee Code Annotated § 67-1-1801(a)(1)(b). In its complaint, SBC asserted its business was conducted exclusively by mail order and via the Internet, and that it was not liable for sales and use taxes in Tennessee. It asserted that no agency relationship exists between SBC and teachers who participate in its program, but that teachers act as agents of their students when they place orders for SBC's products. SBC asserted Tennessee had neither taxing nexus nor taxing jurisdiction over SBC, and that the tax assessment was impermissible under the Due Process Clause of the Fourteen Amendment and the Commerce Clause of the United States Constitution. It further asserted that the assessment violated its rights under Article I, Section 8 of the Constitution of Tennessee.

-2-

The Commissioner answered and counter-claimed in May 2009. The Commissioner denied SBC's allegations, and counter-claimed for a judgment in the amount of $5,705,087.52, plus interest. The Commissioner also prayed for attorneys fees and litigation expenses pursuant to Tennessee Code Annotated § 67-1-1803(d), and costs.

The parties filed motions for summary judgment and statements of undisputed facts in February 2011. The trial court heard the motions on April 29, 2011. On May 26, 2011, the trial court entered final judgment granting SBC's motion and denying the Commissioner's motion. The trial court awarded fees and costs to SBC, but reserved the determination of the award pending appeal. The trial court entered final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, and this appeal ensued.

## *Issue Presented*

The Commissioner presents one issue for our review:

Whether the activities of in-state schools and school employees on behalf of an out-of-state seller that enable the seller to establish and maintain a market in Tennessee create sufficient nexus with Tennessee under the Commerce Clause of the United States Constitution to support an assessment of Tennessee sales and use taxes against the seller.

## *Standard of Review*

We review a trial court's award of summary judgment *de novo*, with no presumption of correctness, reviewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted). Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. at 83 (quoting Tenn. R. Civ. P. 56.04). The burden is on the moving party to demonstrate that the admissible facts in the record show there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Blue Bell Creameries v. Roberts*, 333 S.W.3d 59, 64 (Tenn. 2011) (citations omitted). These elements are not altered where both parties have moved for summary judgment. *Id*. Rather, each party has the burden of demonstrating that it is entitled to summary judgment. *Id*. Where the parties submit differing statements of fact but do not contest any fact, we will review the record to determine whether a genuine issue of material fact exists. *See id*.

In the present case, the parties both assert that no genuine issue of material fact exists. Each contends, however, that it is entitled to a judgment as a matter of law. Upon review of the record, we agree that no issue of material fact exists. "The determination of whether a tax assessment is contrary to statute or is unconstitutional requires an application of law to the facts." *Id.* Appellate review of a trial court's application of the law to the facts is *de novo*, with no presumption of correctness. *State v. Ingram*, 331 S.W.3d 746, 755 (Tenn. 2011).

## *Discussion*

The issue before us presents a very narrow issue requiring an application of the law to undisputed facts. Before addressing the issue presented on appeal, however, we first turn to the procedural posture of this case.

As noted above, SBC asserted three claims in its complaint. It asserted that the Commissioner's assessment of sales and use taxes violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution; that the assessment violated the Commerce Clause of the United States Constitution; and that the assessment violated Article I, Section 8 of the Tennessee Constitution. In its motion for summary judgment, SBC moved for a judgment finding the assessment "illegal, incorrect, and void," but did not specify a particular Constitutional ground for relief in its motion. In its May 2011 judgment, the trial court granted SBC's motion upon determining that SBC "lacked a 'substantial nexus' in the State of Tennessee" under *Quill Corp. v. North Dakota*, 504 U.S. 298 (1992) and *Arco Building Systems, Inc. v. Chumley*, 209 S.W.3d 63 (Tenn. Ct. App. 2006). The trial court did not dismiss any claim in its May 2011 judgment, but directed entry of final judgment pursuant to Rule 54.02.

On appeal, the issue raised by the Commissioner is whether the trial court erred by granting judgment to SBC on claims asserted under the Commerce Clause. In its brief, the Commissioner asserts:

> In its Complaint Scholastic also raised the issues that the Commissioner's assessment violated the Due Process Clause of the United States Constitution, as well as Article I, Section 8, of the Tennessee Constitution. . . . However, as recognized in the Chancery Court's Judgment and Final Order, as well as both motions for summary judgment, the sole issue in dispute is whether Scholastic has sufficient nexus with Tennessee to be subject to Tennessee's sales and use tax laws under the federal Commerce Clause.

The Commissioner asserts that SBC's claim under the Commerce Clause was the only claim

adjudicated by the trial court, and SBC does not dispute this assertion.

Although it does not appear that SBC voluntarily non-suited its Due Process or Tennessee Constitution claims, or that the trial court expressly dismissed them, the trial court's order clearly awards summary judgment to SBC on the grounds that the Commissioner's assessment of sales and use tax is Constitutionally impermissible under the Commerce Clause. The trial court directed entry of its judgment in favor of SBC as final pursuant to Rule 54.02.[1]  Thus, as far as we can perceive from the record, SBC's claims under the Due Process Clause and the Tennessee Constitution have not been adjudicated. We have determined that the trial court's certification of the judgment as final pursuant to Rule 54.02 is appropriate, and turn to the issue raised on appeal.

The issue presented by this case is controlled by the United States Supreme Court's holding in *Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S. Ct. 1904 (1992), which this Court recently discussed in *Arco Building Systems, Inc. v. Chumley*, 209 S.W.3d 63 (Tenn. Ct. App. 2006).  The "negative" or "dormant" Commerce Clause "prohibits certain state actions that interfere with interstate commerce[,]" and limits the power of States to tax vendors in interstate commerce.  *Quill Corp.*, 504 U.S. at 309.  A State may assess a tax against an out-of-state vendor if the "'tax [1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State.'" *Id.* at 311 (quoting *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, (1977)).

In *Quill Corp.,* the Supreme Court examined the requirement of "a substantial nexus with the taxing State" for the purpose of assessing sales and use taxes, and reaffirmed the "safe harbor" created "for vendors 'whose only connection with customers in the [taxing] State is by common carrier or the United States mail.'" *Id.* at 315 (quoting *National Bellas*

---

[1]Rule 54.02 of the Tennessee Rules of Civil Procedure provides:

When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the Court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

*Hess, Inc. v. Dep't of Rev. of Illinois*, 386 U.S. 753, 758 (1967)). Although the Court observed that it might not have reached the same conclusion if the issue had arisen for the first time when *Quill Corp.* was decided, in the interest of *stare decisis*, the Court left it to Congress to "decide whether, when, and to what extent the States may burden interstate mail-order concern with a duty to collect taxes." *Id.* at 311-318. Accordingly, under *Quill Corp.*, an out-of-state vendor whose sales are by mail order must have some sort of presence in the taxing State for a sales and use tax to be permissible under the Commerce Clause. Observing that the rule created an "artificiality[,]" the Court noted that whether a substantial nexus exists "may turn on the presence in the taxing State of a small force, plant, or office." *Id.* at 315 (citations omitted). The Court further stated that, although "minimum contacts" may exist to satisfy the requirements of the Due Process Clause, the "substantial nexus" required by the dormant Commerce Clause may yet be lacking. *Id.* at 313. Accordingly, a tax that is consistent with the Commerce Clause generally will be consistent with the Due Process Clause. *See id.* However, a tax may be consistent with the Due Process Clause but be prohibited under the Commerce Clause. *Id.*

In this case, SBC asserts it neither owns nor leases real or personal property in Tennessee; that it has no employees, agents, salesmen, independent contractors or representatives in this State; that it maintains no bank accounts, data, telephone listing, web address or mailing address in Tennessee; and that it has never been provided any direct state or local governmental services by Tennessee. SBC contends its only connection to customers in Tennessee is through mail order. In the statement of undisputed facts filed in support of its motion for summary judgement, SBC stated:

> Scholastic conducts its mail order business by mailing catalogs monthly during the school year to classrooms at primary, secondary and nursery schools across the United States, including in the State of Tennessee. It also mails catalogs to the homes of home-schooled students . . . .

> Teachers and parents of home-schooled students, at their discretion, decide whether to distribute these catalogs to students. Scholastic has no right to control whether a teacher or parent will respond to or distribute its catalogs, or whether that teacher or parent will place orders . . . . teachers and parents are under no obligation or commitment to assist their students in purchasing books . . . .

> Teachers who place orders with Scholastic can place orders with other book club companies.

> Students, with the assistance of their teachers and parents, may select

books for purchase . . . .

Students give their book orders to their teachers and parents, together with payment for the books. The teachers and parents, in turn, enter their own orders and those of their students on a master form. The teachers and parents can forward the order, along with total payment for the order, to Scholastic's offices in Missouri, or the teachers and parents can submit the total order over the telephone to Scholastic's offices in Missouri and submit the payment by mail . . . .

. . . .

Scholastic accepts and fulfills these orders at its facilities in Missouri and delivers the books, by common carrier, to the classes or homes that ordered them. In the case of student orders, the books are distributed to them by teachers and parents to the students who ordered them.

The Commissioner does not dispute these facts. In his brief to this Court, the Commissioner asserts that these facts establish that SBC's relationship with its customers in Tennessee is not merely by mail order. The Commissioner asserts that, regardless of whether an agency relationship exists between SBC and Tennessee teachers, SBC's use of Tennessee teachers to effectuate sales is sufficient under *Quill Corp*. and its progeny to sustain the assessment of sales and use taxes against it.

SBC asserts in its brief that the undisputed facts establish that it does not have the "physical presence" in Tennessee necessary to sustain the Commissioner's assessment under *Quill Corp*. It asserts Tennessee teachers are not agents of SBC, but act on behalf of students to assist them with the ordering process. SBC also submits that the Commissioner cannot now assert that taxation is permissible even if no agency relationship exists where the Commissioner relied on an agency theory throughout the course of discovery in this matter.

Upon review of the record, we observe that, in its January 2009 letter to SBC following the parties' informal taxpayer conference, the Commissioner stated that the auditor had determined that an implied agency relationship existed between SBC and the teachers. The Commissioner further stated in its January letter that, in addition to asserting that the teachers did not act as its agents but on behalf of the students, SBC had "argue[d] that even if Tennessee teachers could be considered agents of the Taxpayer, the Taxpayer still lacks the bright-line physical presence required for a finding of substantial nexus." In its February 4, 2011, motion for summary judgment, the Commissioner did not rely on an agency theory in support of its motion. The Commissioner asserted that the undisputed facts established

that a substantial nexus existed between SBC and Tennessee such that the assessment of sales and use taxes against SBC was not in violation of the Due Process or the Commerce Clause. In its response to the Commissioner's motion, SBC submitted that the Commissioner should not be allowed to assert a ground other than agency as a basis for the tax assessment. It argued, however, that even if the question before the court was whether the teachers might be considered independent contractors, the Commissioner's claim should fail.

In light of the entirety of the record, we agree with the Commissioner that the issue in this case is not whether Tennessee teachers may be considered agents of SBC, but whether SBC's connections with Tennessee's schools and teachers establishes a "substantial nexus" such that the Commissioner's assessment may be sustained under the Commerce Clause. The parties acknowledge that our sister jurisdictions that have considered whether SBC's activities satisfy the substantial nexus requirement are split on this matter.[2]  Our analysis in *Arco Building Systems, Inc. v. Chumley*, 209 S.W.3d 63 (Tenn. Ct. App.) is instructive here.

In *Arco*, we examined the evolution of the case law leading to the Supreme Court's holding in *Quill Corp.*, and noted that whether a vendor has "physical presence" in the taxing State is a highly fact-driven inquiry. *Arco*, 209 S.W.3d at 73.  Writing for the Court, Judge (now Justice) Koch  observed that "[i]n *Quill Corp.*, the Court used the phrase 'physical presence' as a term of art to describe the connections it had previously found sufficient to support the imposition of state sales and use taxes on out-of-state companies." *Id.* at 74. We noted that the Court had upheld the assessment of sales and use taxes against out-of-state vendors using "non-employee representatives who are not regular agents to conduct business activities in the taxing state." *Id.* (citing *Tyler Pipe Indus., Inc. v. Wash. State Dep't of Revenue*, 483 U.S. 232, 249-51 (1987)).  We noted that the determinative issue to be decided by the court "is whether substantial business activities 'have been carried on in the taxing state on the taxpayers behalf.'" *Id.* (quoting *America Online, Inc. v. Johnson*, 2002 WL 1751434, at *2*; see also Tyler Pipe Indus., Inc. v. Wash. State Dep't of Revenue*, 483 U.S. at 249, 107 S.Ct. at 2821; *Scripto, Inc. v. Carson*, 362 U.S. 207, 211-12, 80 S.Ct. 619, 622 (1960)("The test is simply the nature and extent of the activities of the [seller] in Florida [i.e., the taxing state].")).  In *Arco*, we held that the Commissioner's assessment of sales and use taxes did not violate the Commerce Clause where the taxpayer had neither property nor employees nor agents in Tennessee, but utilized manufacturers in Tennessee to fill orders

---

[2]The assessment of sales and use taxes was upheld in *In Re Scholastic Book Clubs, Inc.*, 920 P.2d 947 (Kan. 1996) and *Scholastic Book Clubs, Inc. v. State Board of Equalization*, 207 Cal. App.3d 734 (1989). It was not permitted by *Pledger v. Troll Book Clubs, Inc.*, 871 S.W.2d 389 (Ark. 1994)(addressing identical issues); *Scholastic Book Clubs, Inc. v. Michigan Department of Treasury*, 567 N.W.2d 692 (Mich. Ct. App. 1997); and *Scholastic Book Clubs, Inc. v. Commissioner of Revenue Services*, Nos. CV074013027S, CV074013028S, 2009 WL 1175675 (Conn. Super. 2009).

shipped by common carrier to its buyers. *Id.* at 75.

A safe harbor from a State's ability to assess sales and use taxes exists under the Commerce Clause "for vendors 'whose only connection with customers in the [taxing] State is by common carrier or the United States mail." *Quill Corp.*, 504 U.S. at 315 (quoting *National Bellas Hess, Inc. v. Dep't of Revenue of Ill.*, 386 U.S. 753, 758 (1967). The undisputed facts of this case demonstrate that SBC is not a vendor whose *only* connection with customers in Tennessee in by common carrier or by mail. SBC utilizes Tennessee schools and teachers to facilitate sales to school children in Tennessee. SBC sends its marketing materials and order forms to teachers and schools who are, in many if not most instances, funded by state and local governments. Teachers then distribute the marketing information and order forms to students, who take them home and, with their parents, decide whether to order books. The students and their parents then remit their orders and payment to the teachers, who compile the orders on a master form and forward payment to SBC. SBC delivers the books to the schools by common carrier, and Tennessee teachers then distributes them to their students. In short, SBC has created a *de facto* marketing and distribution mechanism within Tennessee's schools and utilizing Tennessee teachers to sell books to school children and their parents. Contrary to SBC's assertion that it uses no public services in Tennessee, this State's school facilities and teachers are, in large part, funded by taxpayer dollars. We agree with the Commissioner that SBC's connections with its customers in Tennessee do not fall with the narrow safe harbor provisions affirmed in *Quill Corp.*

## *Holding*

In light of the foregoing, the judgment of the trial court is reversed. This case is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to the appellee, Scholastic Book Clubs, Inc.

_____
DAVID R. FARMER, JUDGE